**Susan M. MAXWELL, Plaintiff,**

**v.**

**K MART CORPORATION, Melville Corporation, Morse Shoe, Inc. and Shopko Stores, Inc.**

Civ. No. 4–93–525.

United States District Court,
D. Minnesota,
Fourth Division.

Earl D. Reiland, Daniel W. McDonald, Alan G. Gorman, and Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A., Minneapolis, MN, for plaintiff.

James J. Foster, and Wolf, Greenfield & Sacks, P.C., Boston, MA, and Bruce H. Little, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, MN, for defendant Shopko Stores, Inc.

## ORDER

DOTY, District Judge.

This matter is before the court on the motion of Shopko Stores, Inc. ("Shopko") for summary judgment and dismissal. Based on a review of the file, record and proceedings herein, the court grants Shopko's motion for summary judgment.[1]

## BACKGROUND

This case concerns various systems used to connect shoes which do not have lace holes, buckles or other apertures through which a filament can be threaded to join the shoes. Maxwell is the owner of record and named inventor of United States Patent No. 4,624,-060 ("'060 patent"). The patent claims a "system for connecting mated pairs of shoes to prevent separation and possible mismatching when offered for sale in self-service stores." Maxwell patent, abstract. The '060 patent describes a system that threads a filament through "fastening tabs" secured between the inner and outer soles of each shoe of a mated pair. Maxwell's shoe connection system securely joins mated shoes together without damaging the shoes. The tabs used to attach the shoes are not visible when the shoes are worn and do not irritate the wearer. Maxwell filed an application for a patent on October 6, 1983, and a patent was issued on November 25, 1986.

In 1985, Maxwell granted Target Stores a non-exclusive license to use the attachment system on shoes purchased for resale. Once Target began using Maxwell's shoe connection system, other discount retailers, including the defendants, followed suit. Maxwell filed suit alleging that defendants Shopko and Morse Shoe, Inc. ("Morse"), as well as others, sold shoes using attachment systems that infringed the '060 patent. Shopko operates a chain of discount department stores. Morse has a licensing agreement to operate the shoe departments in all Shopko stores. Shopko leases space to Morse for the purpose of selling shoes and related merchandise. Shopko also provides certain services

---

1. Melville Corporation's motion for summary judgment and the cross-motions for partial summary judgment brought by Melville, Morse Shoe, Inc. and Susan Maxwell will be addressed by separate order.

to Morse including check out and return service. In return, Shopko receives a licensing fee of eighteen percent of the revenues from Morse's shoe sales.

Morse owns all the shoes and related merchandise in the shoe departments.[2] Morse controls the selection, manufacturing, shipment, receiving, displaying, coding and pricing of shoes and related merchandise. Morse hires, fires and pays all employees working in the shoe departments. Morse employees staff, manage and inspect the shoe departments, although Shopko employees perform the physical sale at the cash registers. Proceeds from shoe sales, after deduction of Shopko's fees, go to Morse. Complaints and returns are also handled, at least initially, by Shopko employees.

Shopko controls advertising related to the sale or promotion of all merchandise including shoes sold by Morse.[3] Any advertising concerning shoes is subject to Morse's approval. Morse pays Shopko a small percentage of its revenues from the sale of shoes to offset advertising costs. Morse may not issue its own advertising without written approval from Shopko. Morse must also obtain Shopko's approval before installing signs in the shoe department or on the exterior of the store.

Maxwell alleges that Shopko "has infringed and continues to infringe" her patent "by selling shoes and cooperating with Defendant, Morse Shoe, Inc., in the sale of shoes using the [patented] system" and by "profiting from such sales." Maxwell contends that the evidence is sufficient to show that Shopko actively participates in the sale of shoes that infringe the '060 patent. Shopko responds that Maxwell has failed to show that it sells any shoes connected by systems alleged to infringe the '060 patent. Shopko seeks summary judgment based on the reasons stated by the court in *Maxwell v. K Mart, et al.*, 851 F.Supp. 1343 (D.Minn.1994). The court agrees with Shopko that the same reasoning applies here.

## DISCUSSION

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which requires the trial court to enter judgment as a matter of law if there can be but one reasonable conclusion as to the verdict. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. at 2510.

On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue facts supporting its claim will be developed later or at trial. Rather the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, judgment as a matter of law should not be granted. *See Anderson*, 477 U.S. at 250–51, 106 S.Ct. at 2511–12. If a plaintiff fails to support an essential element of a claim, however, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552.

Section 271(a) of Title 35 of the United States Code defines direct patent in-

---

**2.** Shopko sells certain footwear, including athletic shoes, in other departments in its stores. There is no allegation that any of these shoes infringe the '060 patent.

**3.** Advertising for shoes occupies about three percent of the space in circulars issued by Shopko.

fringement as the unauthorized making, using or selling of a patented invention within the United States. 35 U.S.C. § 271(a). Under certain circumstances, a defendant, although not technically making, using or selling a patented invention, may be liable for actively inducing infringement of a patent. 35 U.S.C. § 271(b). A defendant may be liable for infringement under section 271(b) for "actively and knowingly aiding and abetting another's direct infringement." *C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc.*, 911 F.2d 670, 674 (Fed.Cir.1990) (citation omitted). There is no intent element to direct infringement. However, proof of actual intent to cause or encourage the acts which constitute the infringement is a necessary prerequisite to active inducement. *Hewlett–Packard, Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed.Cir.1990).

 Maxwell has failed to offer evidence upon which a jury could hold Shopko liable as a direct infringer. Shopko leases space in its stores to Morse for the purpose of selling shoes and related merchandise. Morse, not Shopko, operates the shoe departments and sells shoes alleged to infringe the '060 patent. Morse exercises complete control over the inventory of the shoe departments. The shoes are selected, shipped, received, displayed and priced by Morse. The advertising and other services performed by Shopko do not provide a basis for imposing liability for direct infringement of the '060 patent.

Because Shopko promotes the sale of shoes through advertising and performs the physical sale at the cash register, Maxwell contends that Shopko actively participates in infringing activities. Maxwell must produce evidence sufficient to show that Shopko actively participates in using, making or selling the patented invention. Maxwell asserts that Shopko participates in Morse's infringement of the '060 patent by (1) leasing its shoe departments to Morse; (2) profiting from Melville's operation of the shoe departments; (3) advertising shoes under the Shopko name; and (4) participating in the physical sale of shoes at the cash registers.

Maxwell argues that Shopko's actions make it an active participant in the infringement of her patent. Maxwell fails to establish a connection, however, between Shopko's activities and the acts which constitute the alleged infringement. While the license agreement gives Shopko some authority over Morse, it does not give Shopko control over the manufacture of shoes or the accused devices. Shopko does not exercise any control over the inventory of the shoe departments. There is no evidence which tends to show that Shopko knowingly aided and abetted Morse's alleged infringement of the '060 patent. Maxwell has failed to produce evidence upon which a jury could find that Shopko knowingly participated in or intended to induce Morse's alleged infringement of her patent. Accordingly, the court holds that Shopko is entitled to summary judgment.

### CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Shopko's motion for summary judgment is **GRANTED**.